# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENIN GARCIA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br><br><br><br>E. MORENO, et al.,<br><br>　　　　　Defendants. | Case No.: 1:18-cv-00014-DAD-SAB (PC)<br><br>ORDER GRANTING PLAINTIFF'S REQUEST TO FILE A SURREPLY<br><br>[ECF No. 38]<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 32]<br><br>ORDER PERMITTING DEFENDANTS TO FILE A MOTION REQUESTING EVIDENTIARY HEARING |

　　　　Plaintiff Lenin Garcia is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff paid the $400.00 filing fee for this action.

　　　　Currently before the Court is Defendants' motion for summary judgment, filed August 6, 2018.

///

///

///

///

# I.
# BACKGROUND

This action is proceeding on Plaintiff's failure to protect claim against Defendants E. Moreno, Pena, H. Hinojosa, Segura and M. Silva, excessive force claim against Defendant Moreno, retaliation claim against Defendants Moreno, Pena, Hinojosa, Segura and E. Silva, and failure to decontaminate cell claim against Defendants D. Hick, M. Harris, and E. Silva.

Defendants filed an answer to the complaint on August 2, 2018. On August 3, 2018, the Court issued the discovery and scheduling order.

As previously stated, on August 6, 2018, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust the administrative remedies. Plaintiff filed an opposition on August 19, 2018, and Defendants filed a reply on September 6, 2018.

On September 17, 2018, Plaintiff filed a request to file a surreply to Defendants' reply. The Court will grant Plaintiff's request for file a surreply. Absent leave of court, no briefing on Defendants' motion is permitted beyond the opposition and reply. However, the Court may allow a surreply where "a valid reason for such additional briefing exists." Thornton v. Cates, No. 1:11-cv-01145-GSA-PC, 2013 WL 2902846, at *1 (E.D. Cal. June 13, 2013). Here, the Court finds a valid reason for allowing a surreply given that Defendants' reply has submitted additional and new evidence to support their original motion. Accordingly, Plaintiff's motion for leave to file a surreply is granted, and Plaintiff's surreply will be considered herein.

# II.
# LEGAL STANDARD

**A.   Statutory Exhaustion Requirement**

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner

need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

///

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

## III.

## DISCUSSION

### A. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

**B.    Summary of Allegations Underlying Plaintiff's Constitutional Claims**

On November 8, 2016, Plaintiff observed Defendants Pena, Moreno, Segura, and Hinojosa escorting inmate Contreras. Plaintiff heard Contreras yelling at the Defendants that he was suicidal and homicidal and did not want to go in the cell with Plaintiff. Contreras requested to be sent to the crisis bed unit, to be placed in another cell or to be sent to administrative segregation. Defendants refused and Contreras told them "I will hurt myself I will hurt anyone." Defendant Pena stated "we don't care this is Corcoran you need to go in the cell and do what you had to do." Defendant Hinojosa stated "I bet he is not going to do nothing." Defendant Segura stated, "This is Corcoran go in there and do what you had to do." Defendant Moreno stated, "You are delaying count you need to go in there and do what you had to do." After Plaintiff heard the threats made by Contreras and the refusal of Defendants to place him in suicide watch, Plaintiff feared for his safety and pleaded with Defendants to not place Contreras in his cell. Defendants ignored Plaintiff and Silva stated out loud "six, o, two, us like you always do, you hear me Garcia." All the Defendants laughed out loud at Silva's statement. Defendant Silva then opened Plaintiff's cell door and Contreras refused to enter the cell, but Defendants Pena, Moreno, Hinojosa and Segura all forcefully pushed Contreras inside Plaintiff's cell. Once inside the cell, Contreras refused to relinquish the handcuffs, he again yelled at Defendants "I will hurt myself or anyone else." Plaintiff again pleaded with Defendants to move Contreras out of his cell, and Defendants again ignored Plaintiff. Contreras continued refusing to give up the handcuffs, after sometime he allowed staff to remove the handcuffs, and Contreras immediately pushed Plaintiff and punched him in the face knocking him down to the floor and repeatedly punched Plaintiff and bit him on the arm. While Plaintiff was on the floor, Defendant Moreno sprayed him with pepper spray. Defendant Silva opened the cell door and Defendants proceeded to remove Contreras from the cell and secured the cell door. Plaintiff continued to lay on the floor of the cell while Defendant Moreno continued to spray pepper spray on him. Plaintiff was later handcuffed and escorted by Defendants Hicks to the medical unit for assessment. After the assessment, Plaintiff asked Defendants Hicks, Harris, and Silva to decontaminate the cell, but the Defendants refused. Plaintiff thereafter refused to enter the cell, but Defendants Hicks, Harris and Silva forcefully pushed him

5

inside the cell and left him there for several days without decontamination. Plaintiff had trouble breathing the toxic fumes, respiratory failure, dizziness, blurred vision, and cough.

After the incident, Defendants acted in concert to cover up their misconduct by filing false reports. Defendant Moreno authored a false rules violation report charging Plaintiff with the specific act of fighting and he lied in his report by stating he alone escorted Contreras to Plaintiff's cell and both inmates got in a fighting stance and began fighting one another. Moreno also omitted from his report that Contreras told them he did not want to go in the cell with Plaintiff, that he was suicidal and going to herself himself or someone else, and that Plaintiff pleaded with them not to put Contreras in his cell. Moreno also omitted from his report that Pena, Hinojosa, Segura and himself (Moreno) forcefully pushed Contreras inside Plaintiff's cell.

Defendant Silva, Hicks and Harris also filed a false report about the incident by omitting that after pepper spray was administered in the cell they refused to decontaminate Plaintiff's cell and when Plaintiff refused to enter the cell they forcefully pushed him inside. Plaintiff was found not guilty of the false rules violation charge for fighting.

In November 2016, Plaintiff submitted an inmate appeal regarding the incident and all of Defendants' actions. Plaintiff also inquired as to the status of his appeal. However, Plaintiff's appeal was not lodged, processed or responded to. Plaintiff sought relief at several different levels of review all of which failed to respond to his appeal.

### C. Statement of Undisputed Facts

1. Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff is currently incarcerated at Mule Creek State Prison. All events relevant to this action occurred when Plaintiff resided at Corcoran State Prison on November 8, 2016. (Compl. at 1, ECF No. 1.)

2. Defendants E. Moreno, M. Harris. E. Silva, D. Hicks, H. Hinojosa, M. Silva, Pena, and Segura are employed as correctional officers at CDCR. All officers were working at Corcoran State Prison during the allegations made in Plaintiff's complaint. (Compl. at 2-3.)

3. Plaintiff filed this lawsuit on December 29, 2017, and brings claims for excessive force, failure to protect, deliberate indifference, and retaliation under the First Amendment against

6

Defendants Pena, Moreno, Segura, Hinojosa, Hicks, Harris, E. Silva, and M. Silva for an incident that occurred on November 8, 2016. (Compl. at 5-9.)

4. Section 3084.1 of title 15 of California Code of Regulations provides inmates who are in the custody of CDCR with an administrative grievance process. Accordingly, under § 3084.1, an inmate or parolee can appeal for review of "departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees. (Declaration of T. Galaviz ("Galaviz Decl.") ¶ 3, ECF No. 32-4.)

5. CDCR's inmate appeals process typically has three levels of appeals. The first two levels of appeals are handled at the inmate's specific institution. The third level of appeals is handled by CDCR's Office of Appeals. Under Cal. Code Regs., tit. 15 § 3084.1(b), "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by appellant that was not included in the originally submitted CDCR Form 602 Inmate/Parolee Appeal [. . .] and addressed through all required levels of administrative review up to and including the third level." Furthermore, cancellation or rejection decision does not exhaust administrative remedies. (Galaviz Decl. ¶ 3.)

6. When filing an appeal, the inmate must use the CDCR Form 602 to describe the specific issues under appeal and the relief requested. The inmate must list all staff members involved and describe their involvement in the issue. (Id.)

7. An appeal may be rejected if the appeal is incomplete. An appeal that is rejected for this reason may be later accepted if the reason noted for the rejection is corrected. (Declaration of M. Voong ("Voong Decl.") ¶ 4, ECF No. 32-5.)

8. Plaintiff filed a CDCR 602 appeal form, alleging a grievance against Defendants Moreno, Harris, Silva, Hicks, Hinojosa, M. Silva, Segura, and Pena, which was received for second level review on December 6, 2017. This appeal was submitted by the inmate on October 31, 2017 at Mule Creek State Prison's Appeals Office. It was rejected by Corcoran's Appeals Office on November 21, 2017 and submitted for Second Level Review on December 6, 2017. (Galaviz Decl. ¶ 6, Ex. B.)

///

9. Plaintiff's 602 described how Officers Pena, E. Moreno, H. Hinojosa, Segura, and Silva failed to protect Plaintiff from inmate Contreras. It also described how Contreras assaulted Plaintiff and how the officers continued to spray Plaintiff and refused to decontaminate Plaintiff's cell. (Galaviz Decl. ¶ 6, Ex. B.)

10. Once Corcoran's appeals office received Plaintiff's inmate grievance, it processed the grievance as a staff complaint. (Galaviz Decl. ¶ 6, Ex. B.)

11. As part of Plaintiff's second level review, Lieutenant J. Amaya interviewed Plaintiff on December 18, 2017. Plaintiff stated, during that time, that he believed that staff was retaliating against him for filing 602s. (Galaviz Decl. ¶ 7, Ex. C.)

12. Plaintiff's appeal was partially granted, in that the issues raised in Plaintiff's appeal were addressed; however, the second level review concluded that the staff members did not violate CDCR policy. Plaintiff was notified of the second level review's conclusion on December 29, 2017. At that time, he was advised that he needed to receive a decision at the third level of review in order to exhaust all levels of appeal. (Id.)

13. On January 19, 2018, Plaintiff appealed to the third level of review. CDCR's Office of Appeals received appeal log number 17-6231 on January 29, 2018. That appeal was logged by the Office of Appeals for third level review under log number 1801871. (Voong Decl. ¶ 7.)

14. On March 21, 2018, the Appeals Coordinator rejected Plaintiff's request for third-level review and remanded the matter to the appeals coordinator at Corcoran to take further action to complete the appeal. The Office of Appeals notified Plaintiff of its determination. The Office of Appeals further instructed Plaintiff that the Corcoran's Appeals Coordinator had thirty working days to compete the additional action necessary to complete the appeal. If Plaintiff did not receive notification of further action taken within thirty working days' time, he was instructed to file an appeal on the inaction of the institution. The Office of Appeals also advised Plaintiff that, in the event he was dissatisfied with the amended second level response, Plaintiff had thirty calendar days from the date of the second level response to re-submit his appeal for third level review. (Voong Decl. ¶ 7.)

15. Title 15 § 3084 outlines the time limits in which the institution must review appeals. Subsection (d) provides exceptions to the time limits for review of inmate appeals. Section 3084(d)(2)

provides an exception to the time limit if the complexity of the decision, action, or policy requires additional research. If there is an exceptional delay for that reason, title 15 § 3084.8(e) requires the institution to notify the inmate with an explanation for the reasons for the delay and the estimated completion date. (Galaviz Decl. ¶ 8, Ex. D.)

16. On April 12, 2018, the Appeals Coordinator for Corcoran State Prison sent Plaintiff a letter notifying him that there was an exceptional delay in the review of his appeal due to the complexity of the decision, action, or policy. The institution further estimated that the completion date for the second level review of the inmate's appeal would be May 23, 2018. (Id.)

17. There is no record of Plaintiff's appeal being accepted or exhausted at the third level of review. (Voong Decl. ¶ 7.)

### D.     Defendants' Motion for Summary Judgment

Defendants argue that Plaintiff failed to complete the administrative appeal process prior to filing the instant action, and he failed to properly raise his retaliation claim in his initial inmate appeal.

In opposition, Plaintiff contends the prison failed to properly log or process an appeal submitted in November 2016. Plaintiff further contends that although appeal number CSPC-8-17-06231 contains similar factual allegations as those in the instant action, but the requested relief is different than what he seeks in this action.

In response, Defendants argue that Plaintiff's November 8, 2016, appeal did not exhaust the administrative remedies or demonstrate that they were unavailable.

It is undisputed that Plaintiff did not complete the administrative appeal process prior to filing the instant action. It is further undisputed that Plaintiff filed this action on December 29, 2017, just days after Corcoran's Appeal Office submitted appeal number CSPC-8-17-06231 for review at the second level on December 6, 2017. (Galaviz Decl. ¶ 5, Ex. A.) Appeal number CSPC-8-17-06231 contains similar factual allegations as those in the instant complaint. (Galaviz Decl. ¶ 6, Ex. C.) As part of Plaintiff's second level review, Lieutenant J. Amaya interviewed Plaintiff on December 18, 2017. (Galaviz Decl. ¶ 7, Ex. C.) Plaintiff's appeal was partially granted at the second level of review in that an investigation was conducted and it was determined that staff did not violate CDCR policy. (Id.) Plaintiff was notified the second level decision on December 29, 2017. (Id.) Plaintiff was

9

advised that he needed to receive a decision at the third level of review in order to exhaust all levels of appeal. (Id.)

On January 19, 2018, Plaintiff appealed to the third level of review. (Voong Decl. ¶ 7.) On March 21, 2018, the appeals coordinator rejected Plaintiff's request for third-level review and remanded the matter to the appeals coordinator at Corcoran to take further action to complete the appeal. (Id.) On April 12, 2018, the appeals coordinator for Corcoran State Prison sent Plaintiff a letter notifying him that there was an exceptional delay in the review of his appeal due to the complexity of the decision, action, or policy. (Galaviz Decl. § 8, Ex. D.) The institution further estimated that the completion of the date for the second level review of the inmate's appeal would be May 23, 2018. (Id.) On May 23, 2018, the institution sent another notice informing Plaintiff that there was a delay in the decision and the new estimated date would be July 6, 2018. (Id.) On July 6, 2018, the institution notified Plaintiff that because of the delay the new estimated date would in August 2018. (Id.)

Plaintiff contends that he is entitled to excuse the exhaustion requirement because: (1) he submitted an earlier administrative appeal on November 8, 2016, the day of the incident in question; and (2) despite the fact that appeal CSPC-8-17-06231 contains similar factual allegations to those at issue in this action, Plaintiff's requested relief is different than what he seeks in this lawsuit.

Defendants have submitted evidence and it is undisputed that Plaintiff did not exhaust the administrative remedies for the claims at issue in this action. Accordingly, Defendants have met their initial burden of demonstrating that the administrative remedies were generally available and Plaintiff did not exhaust those administrative remedies. Albino, 747 F.3d at 1172. The burden now shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id.

In his opposition and surreply (as well as in the complaint filed in this action), Plaintiff contends, under penalty of perjury, that on November 11, 2016, he submitted an inmate appeal complaining of Defendants Moreno, Hinojosa, Segura, Pena, E. Silva, Harris, Hicks, and M. Silva action on November 8, 2016, relative to the claims at issue in this action. (Pl.'s Opp'n at 2-6, Ex. 4;

Pl.'s Surreply at 2, 6, Ex. 3; Compl. at 9.)[1] However, he never received a response to the appeal. (Id.) Plaintiff also contends, under penalty of perjury, that on December 22, 2016, he inquired as to the lack of response to his November 11, 2016 grievance, but again received no response thereto. (Id.) In addition, contrary to Defendants' argument, Plaintiff submits that he filed the October 13, 2017, grievance for the purpose of expunging the rules violation report records, and not the November 8, 2016, at issue in this complaint. (Pl.'s Opp'n at 2; Pl.'s Surreply at 4.) In support, Plaintiff argues that the October 31, 2017 grievance could not have exhausted the November 8, 2016, incident because it was submitted well beyond the thirty-day deadline and would be considered untimely. (Pl.'s Opp'n at 2; Pl.'s Surreply at 4-5.)

Defendants have not met their ultimate burden on exhaustion. Defendants do not specifically address Plaintiff's argument that he submitted a grievance on November 11, 2016, for which he received no response. Plaintiff also contends under penalty of perjury that he inquired as to the lack of response to his appeal on December 22, 2016, but again received no response. Defendants point out that Plaintiff has failed to attach the grievance paperwork relevant to his claims in this case. However, the lack of the November 11, 2016 grievance, may be attributed to Plaintiff's claim that it was never answered or returned to him. Plaintiff has submitted sufficient evidence in support of his contentions, in the form of his declaration declaring facts under penalty of perjury, based on personal knowledge, that he could testify about and be examined upon. See Fed. R. Civ. P. 56(c)(4).

"Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Ross, 136 S. Ct. at 1858 (quoting 42 U.S.C. § 1997e(a)). When a prison official or administrator thwarts an inmate from taking advantage of a grievance process, such as through machination, misrepresentation, or intimidation, and prevents their use of otherwise proper procedures, this renders the administrative process unavailable. *Id*. (citing Davis v. Hernandez, 798 F.3d 290, 295 (5th Cir. 2015); Schultz v. Pugh, 728 F.3d 619, 620 (7th Cir. 2013); Pavey v. Conley, 663 F.3d 899, 906 (7th

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

11

Cir. 2011); Tuckel v. Grover, 660 F.3d 1249, 1252-53 (10th Cir. 2011); Goebert v. Lee County, 510 F.3d 1312, 1323) (11th Cir. 2007). In this case, Plaintiff has presented evidence that he attempted to exhaust his administrative remedies about the events at issue here by submitting a grievance on November 11, 2016. Whether due to some inadvertent loss of the grievance form, or for some other reason, Plaintiff contends that his grievance was not acted upon by prison officials, and he was thereby prevented from fully exhausting the grievance. Thus, at this juncture, the determination of whether Plaintiff properly submitted a November 11, 2016 appeal turns on the relative credibility of the parties which cannot be determined by way of motion for summary judgment. Based on the evidence submitted by Plaintiff there is a genuine issue of material fact as to whether the circumstances rendered the administrative remedies effectively unavailable to him.

For these reasons, Defendants are not entitled to summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies. An evidentiary hearing would be required to resolve the disputed issues of fact here.

## V.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment for the failure to exhaust available administrative remedies be denied, without prejudice. As explained above, dispute issues of fact preclude the Court from concluding that administrative remedies were available to Plaintiff. In such circumstances, Defendants are entitled to an evidentiary hearing to resolve disputed factual issues, but they have not requested one. See Albino, 747 F.3d at 1170; and

2. If Defendants wish to pursue this defense, they may request an evidentiary hearing by filing a motion for a hearing within **thirty (30) days** or the issue is waived.

//
///
///
///
///

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 31, 2018**

UNITED STATES MAGISTRATE JUDGE